UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Action No. 5:03-CV-179-BR(3)

| GABRIELE QUINN, Individually and as Administratrix of the Estate of PATRICK M. QUINN, <br><br>*Plaintiff* <br><br>v. <br><br>UNITED STATES OF AMERICA, <br><br>*Defendant* |
|---|

FILED
MAR 6 6 2003
DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP. CLERK

**COMPLAINT**

NOW COMES Plaintiffs complaining of Defendants, and alleges and says as follows:

## PARTIES

1. Plaintiff Gabrielle Quinn is a citizen and resident of Cumberland County, North Carolina. Plaintiff's husband, Patrick M. Quinn (hereinafter "Mr. Quinn" or "Plaintiff's decedent") died on February 26, 2002 in Fayetteville, Cumberland County, North Carolina.

2. Plaintiff is the duly appointed Administratrix of the Estate of Patrick M. Quinn. This action is instituted pursuant to the Wrongful Death Statute, N.C. Gen. Stat. § 28A-18-1 *et seq.* and is instituted within two years of the death of Patrick M. Quinn.

3. Patrick M. Quinn was a retired sergeant in the United States Army who served his country for twenty years, both in the United States and overseas.

4. Upon information and belief, Jewel Lee Dorney ("Dorney") is a citizen and resident of the state of North Carolina. In February, 2002, Dorney was employed by Defendant U.S.A. as a "family nurse practitioner" at the Clark Health Clinic, Womack Army Medical

1

Center, Ft. Bragg, North Carolina. In February, 2002, Dorney was not licensed as a nurse practitioner by the State of North Carolina. Nonetheless, Dorney held, and continues to hold, herself out to the public, including Plaintiffs' decedent, as possessing specialized knowledge, skill and care in the field of family medicine.

5. At all times pertinent to this action, Dorney was the agent and employee of Defendant United States of America, and provided care and treatment to Plaintiff's decedent, within the course and scope of her employment.

## JURISDICTIONAL ALLEGATIONS

6. The allegations contained in paragraphs 1 through 5 are incorporated by reference herein as if fully set forth.

7. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671, et.seq. ("FTCA").

8. On March 19, 2002, the plaintiff filed an administrative claim ("claim") under the FCTA with Womack Army Medical Center for wrongful death occurring February 26, 2002 arising out of medical negligence of Dorney that occurred from February 21 to 26, 2002.

9. To date there has been no resolution of plaintiff's claim by the United States Army Claims Service, and the six-month review period has expired.

10. The plaintiff's claim satisfies the jurisdictional prerequisites of the FTCA in all respects.

## PROCEDURAL STATEMENTS

11. Plaintiff expressly denies that Rule 9(j) of the North Carolina Rules of Civil Procedure applies to this case. However, to the extent that N.C. R. Civ. P. 9(j) is held to apply, Plaintiffs object to the requirements of N.C. R. Civ. P. 9(j), on the basis that this Rule seems to require a plaintiff to prove her case before factual discovery is even begun, this Rule denies

2

medical malpractice plaintiffs their rights of due process of law, of equal protection under the law, of the right to open courts, and of the right to a jury trial (in violation of the United States and North Carolina Constitutions) and, further, that Rule 9(j) is an unconstitutional violation of the following: (A) Amendment VII and Amendment XIV of the United States Constitution; (B) Article I, Sections 6, 18, 19, 25 and 32 and Article IV, Sections 1 and 13 of the North Carolina Constitution.

12. Without waiving the objections contained in paragraph 21, counsel for the plaintiffs provides the following information to comply with the requirements of Rule 9(j): The medical care referred to in this Complaint has been reviewed by persons who are reasonably expected to qualify as expert witnesses, or whom Plaintiff will seek to have qualified as expert witnesses under Rule 702 of the Rules of Evidence, and who are willing to testify that the medical care did not comply with the applicable standards of care.

13. To the extent that any of the allegations herein are inconsistent with one another, such allegations are made in the alternative to one another.

## FACTS

14. The allegations contained in paragraphs 1 through 13 are incorporated by reference herein as if fully set forth.

15. At approximately 9:30 a.m. on the 21st day of February, 2002, Patrick Quinn presented to the Clark Clinic with complaints of shortness of breath, sweating, and coughing. Mr. Quinn was not treated at that time, but was told to wait for his scheduled appointment at 11:30 a.m. that day.

16. Apparently, Mr. Quinn was eventually seen by Jewel Lee Dorney, a family nurse practitioner. On examining Mr. Quinn, nurse Dorney noted the presence of rales indicating fluid in Mr. Quinn's lungs as well as sweating.

3

17. Nurse Dorney's note from the February 21, 2002 visit also notes that Mr. Quinn was on two medications for high blood pressure. Additionally, other records available to Nurse Dorney on February 21, 2002, indicate that Mr. Quinn was a long-time smoker.

18. Smoking and high blood pressure are risk factors for heart attack.

19. At the February 21, 2002 visit, Nurse Dorney appears to have ordered a chest x-ray, an electrocardiogram (EKG) and an echocardiogram. Clark Clinic's records contain no indication that the chest x-ray was ever performed.

20. The EKG was, in fact, performed. The print-out from the EKG contained the following information: "ABNORMAL EKG"; "Inferior infarct, age indeterminate", "PRELIMINARY—MD MUST REVIEW".

21. The notation "Inferior infarct, age indeterminate" indicated that the EKG machine had found that Mr. Quinn had suffered a heart attack.

22. Despite the findings on the EKG report, Nurse Dorney discharged Mr. Quinn home.

23. Five days later, while showering at home before returning for his scheduled echocardiogram, Mr. Quinn collapsed and died from heart failure.

24. Upon information and belief, no medical doctor reviewed Mr. Quinn's February 21, 2002 EKG prior to his death; however, Nurse Dorney did review this EKG and discharged Mr. Quinn in spite of the EKG's findings.

25. The results of an EKG performed on Mr. Quinn in 1999 available for comparison during the February 21, 2002.1

26. A comparison between Mr. Quinn's 1999 and February 2002 EKGs would have revealed substantial changes indicating a recent heart attack.

4

27. The standard of care in Fayetteville, North Carolina or similar communities, in February of 2002 required nurse practitioners similarly situated to Nurse Dorney required:

    a. That EKGs be reviewed and appropriately interpreted;

    b. That abnormal EKGs be reviewed by a physician;

    c. That patients Mr. Quinn's condition be hospitalized immediately and have a consult with a cardiologist.

### FIRST CLAIM FOR RELIEF:
### MEDICAL NEGLIGENCE

28. The allegations contained in paragraphs 1 through 46 are incorporated by reference herein as if fully set forth.

29. The standard of care in Fayetteville, North Carolina or similar communities, in February of 2002 required nurse practitioners similarly situated to Nurse Dorney required:

    a. That EKGs be reviewed and appropriately interpreted;

    b. That abnormal EKGs be reviewed by a physician;

    c. That patients Mr. Quinn's condition be hospitalized immediately and have a consult with a cardiologist.

30. Dorney owed a duty of care to Patrick M. Quinn and breached the standard of care applicable to nurse practitioners in Fayetteville, North Carolina or similar communities, in February of 2002, in that:

    a. She failed to exercise that degree of skill and care in diagnosing and treating Patrick M. Quinn required by the standard of care;

    b. She failed to exercise reasonable care and diligence in the application of her knowledge, skill, and ability in the care and treatment of Patrick M. Quinn;

5

c. She failed to exercise her best nursing judgment in the care and treatment of Patrick M. Quinn;

d. She formulated a medical diagnosis and gave medical advice without being supervised by a licensed physician.

e. She ignored clear indications that Mr. Quinn had suffered a heart attack including an EKG report that spelled this fact out in words;

f. She failed to have a physician review Mr. Quinn's EKG, despite express instructions to do so printed on the EKG;

g. She failed to appropriately interpret Mr. Quinn's EKG;

h. She failed to admit Mr. Quinn to the hospital and seek out appropriate physician assistance;

i. She was otherwise negligent as shall be shown through discovery and proven at the trial of this action.

31. As a direct and proximate result of the aforesaid acts of negligence of Nurse Dorney, Patrick M. Quinn died and Plaintiff has been damaged as more fully set forth below.

## CAUSATION AND DAMAGES

32. By reason of the injuries and death of Patrick M. Quinn, proximately resulting from acts and omissions of Defendant described herein, Plaintiff Gabrielle Quinn, as Administratrix of the Estate of Patrick M. Quinn, is entitled to receive damage from Defendant, in an amount in excess of Ten Million and 00/100 ($10,000,000.00) Dollars, including:

a. Compensation for the pain and suffering of mind and body of Patrick M. Quinn prior to his death;

b. The reasonable funeral expenses of Patrick M. Quinn;

6

c. The present monetary value of Patrick M. Quinn to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

   i. net income of the decedent;

   ii. services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered;

   iii. society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

WHEREFORE, Plaintiff prays the Court for the following relief:

1. That she have and recover damages in the amount of $10,000,000.00 for compensatory damages for the wrongful death of Patrick M. Quinn;

2. That the costs of this action be taxed against Defendant;

7

3. That the Court order such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 3rd day of March, 2003.

WHITE & STRADLEY, LLP

_____
J. David Stradley
N.C. State Bar No. 22340
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
(919) 844-0400

8